MICHAEL J. LEVANGIE, State Bar # 160163
BRYAN L. MALONE, State Bar # 144082
**LEVANGIE LAW GROUP**
2021 N Street
Sacramento, CA 95811
Tel:  (916) 443-4849
Fax: (916) 443-4855
Email:  bryan.malone@llg-law.com

Attorneys for Defendants/Counter-Claimants
ASSOCIATION OF BEHAVIOR CONSULTANTS
and WILLIAM J. PALYO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO)

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORNIA, *ex rel.* DEBORAH CULLEN,<br><br>               Plaintiff and Relator,<br><br>v.<br><br>ASSOCIATION OF BEHAVIOR CONSULTANTS, WILLIAM J. PALYO, and DOES 1-20,<br><br>               Defendants.<br><br>ASSOCIATION OF BEHAVIOR CONSULTANTS and WILLIAM J. PALYO,<br><br>               Cross-Plaintiffs,<br><br>vs.<br><br>DEBORAH CULLEN,<br><br>               Cross-Defendant. | CASE NO. 15-cv-01188-EDL<br><br>**DEFENDANTS/COUNTER-CLAIMANTS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM PALYO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RELATOR DEBORAH CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM OF DEFENDANTS/COUNTER-CLAIMANTS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM J. PALYO, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16, AND TO AWARD STATUTORY ATTORNEY FEES**<br><br>Judge  :  Hon. Elizabeth D. Laporte<br>Date   :  May 9, 2017, Tuesday<br>Time   :  9:00 A.M.<br>Place  :  U.S. Courthouse<br>            450 Golden Gate Avenue<br>            15th Floor, Courtroom E<br>            San Francisco, CA 94102 |

## **TABLE OF CONTENTS**

I.      INTRODUCTION…………..................................................................................................1

II.     STATEMENT OF FACTS………...................................................................................1

III.    LEGAL AUTHORITY……….......................................................................................4

III.    LEGAL ARGUMENT        .....................................................................................5

      A.    Relator's Motion to Strike Must Fail Because C.C.P. § 425.16 Does Not Apply to Enforcement Actions Brought in the Name of the United States and of the People of The State of California..................................6

      B.    Because Plaintiffs' Federal Claims Brought Under the Court's Federal Question Jurisdiction Are Not Subject to CCP § 425.16, Relator's Motion To Strike Must Fail. ....................................................6

      C.    The Cases Relied Upon By CULLEN Are Inapposite and Support ABC and PALYO………............................................7

      D.    The Counter-Claim Filed by ABC and William Palyo Does Not Arise or Emanate from Protected Speech....................................8

      E.    Relator CULLEN Mischaracterizes Indemnity as Free Speech; anti-SLAPP Does Not Apply Here ..........................................10

      F.    Relator Cannot Establish That There Is "No Probability" That ABC and PALYO Will Prevail on Their Counter-Claim.................13

V.      CONCLUSION…………        ......................................................................13

COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16

## TABLE OF AUTHORITIES

**Cases**

*Applied Business Software v. Pacific Mortgage Exchange* (2008) 164 Cal.App.4th 1108 ............ 10

*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114 .......................... 10

*Church of Scientology v. Wollersheim* (1996) 42 Cal. App.4th 628 ................................................ 9

*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 ...................................................... 10

*City of Cotati v. Cashman* 29 Cal.4th 69 (2002) .................................................................. 8, 10

*City of Long Beach v. California Citizen's for Neighborhood Empowerment*
    (2003) 111 Cal.App.4th 302 ................................................................................................ 6

*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 ........................................... 10

*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541 .................................................... 11

*Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940 ................................................... 10

*Dickens v. Provident Life and Accident Ins. Co.* (2004) 117 Cal.App.4th 705 ............................ 6

*E. L. White, Inc. v. City of Huntington Beach* (1978) 121 Cal.3d 497, 507 ............................... 11

*Flores v. Emerich & Pike* 416 F.Supp.2d 885 (E.D. Cal. 2006) ....................................................... 8

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.* 63 F.Supp.2d 1127 (N.D. Cal. 1999) .......... 6

*Hull v. Rossi* (1993) 13 Cal.App.4th 1763 ..................................................................................... 5

*Navallier v. Sletten* (2002) 29 Cal.4th 82, 88-89 ......................................................................... 13

*New Net, Inc. v. Lavasoft* 356 F.Supp.2d 1190 (C.D. Cal. 2004) .................................................. 6

*Padres, L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 508-09 ................................................. 5

*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 446-447 ............. 6

*Prince v. Pacific Gas & Elec. Co.* (2009) 45 Cal.4th 1151, 1158. .................................................. 11

*Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973 *(C.D. Cal. 1999)* ............................. 5

*Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973(C.D. Cal. 1999). ................................ 7

*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 317 ........................................................ 5

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC.* 634 F.Supp.2d 1009 (N.D. Cal. 2007) .............. 6

*The Traditional Cat Assoc., Inc. v. Gilbreth* (2004) 118 Cal.App.4th 392, 397 ............................ 5, 6

*United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 960 (9th Cir. 1995) ........................... 7

COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16

*United States ex rel. Hall v. Teledyne Wah Chang Albany* 104 F.3d 230 (9th Cir. 1997)....................7

*Wilcox v. Superior Ct. (Peters)* (1994) 27 Cal.App.4th 809..........................................................5

*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010 ............................................................10

**California Civil Code**

    § 2772 ....................................................................................................................10, 11

    § 2778, subd. 3....................................................................................................................11

**California Code of Civil Procedure**

    § 425.16 ....................................................................................1, 4, 5, 6, 8, 9, 10

    § 425.16(b)(1) ....................................................................................................................8, 9

    § 425.16(b)(d) ....................................................................................................................9

    § 425.16(d) ....................................................................................................................6

    § 425.16(f) ....................................................................................................................6, 7

    § 425.16(g)....................................................................................................................6, 7

    § 428.10(a) ....................................................................................................................9

    § 1542 ....................................................................................................................1, 2

**California Labor Code**

    § 1102.5 ....................................................................................................................1

**California Government Code**

    § 12653 ....................................................................................................................1, 2

    § 12650 ....................................................................................................................3

**Statutes and Regulations**

    31 U.S.C. § 3729(a)(1)(A)....................................................................................................................1, 6

    31 U.S.C. § 3729(1)(B) ....................................................................................................................1, 6

    31 U.S.C. § 3730(h) ....................................................................................................................2, 3

    31 U.S.C. §§ 3729 ....................................................................................................................3

**Other Authorities**

    Pring, SLAPPs: Strategic Lawsuits Against Public Participation,
    7 Pace Envt'l L. Rev., 3, 5-6, 9 (1989)....................................................................................................................5

COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16

## I.  INTRODUCTION

Relator DEBORAH CULLEN'S Special Motion to Strike Counter-Claimants' Counter-Claim under the anti-SLAPP statute is without merit, for numerous reasons.

First, the Counter-Claim filed by ASSOCIATION OF BEHAVIOR CONSULTANTS ("ABC") and WILLIAM PALYO does not emanate from any protected activity designed to chill First Amendment rights.  For this reason alone, CULLEN'S Motion must fail.

Second, CULLEN'S Motion to Strike must fail because C.C.P. § 425.16 does not apply to enforcement actions brought on behalf of the People of the State of California.

Third, California C.C.P. § 425.16 does not apply to federal question claims brought in the Federal Court and accordingly, Relator CULLEN's Motion to Strike must fail as the First and Second Causes of Action brought pursuant to 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(1)(B) which are not subject to being stricken under C.C.P. § 425.16.

## II.  STATEMENT OF FACTS

On March 16, 2015 Plaintiff/Relator DEBORAH CULLEN filed a complaint for damages in the Sonoma County Superior Court charging wrongful termination in violation of public policy, whistleblower retaliation in violation of California Labor Code § 1102.5, whistleblower retaliation in violation of California Government Code § 12653 and failure to pay wages owed, against Defendants ABC and PALYO.  (Declaration of Bryan L. Malone ¶4; Declaration of William J. Palyo, ¶5)

Unbeknownst to ABC and PALYO, CULLEN on behalf of the United States and the State of California previously, on March 12, 2015, filed the present *qui tam* action, under seal, in the United States District Court for the Northern District of California.  (Defendants request the Court to judicial notice of the *qui tam* action filed in the instant Case No. CV-01188-EDL.)

On March 4, 2016, the parties and their respective counsel executed in the State court action a *first* "Settlement Agreement and General Release" only as to the Fourth Cause of Action, alleging failure to pay wages owed.

On September 14, 2016, the parties and their counsel in the State court action executed a *second* "Settlement Agreement and General Release," confidentially resolving the remaining

1

First, Second, and Third Causes of Action of Plaintiff's State court complaint. (See Declaration of Bryan L. Malone, ¶5) After she filed the *qui tam* action, MS. CULLEN executed a general release in favor of Defendants and Counter-Claimants on September 14, 2016, specifically waiving all rights under California C.C.P. § 1542. MS. CULLEN further agreed that the release specifically applied to any individual and/or representative claims of whistleblower retaliation pursuant to the Federal False Claims Act (31 U.S.C. §§ 3730(h)) and the California False Claims Act (California Government Code § 12653). (See Declaration of Bryan L. Malone, ¶6) DEBORAH CULLEN agreed to indemnify and hold harmless Defendants and Counter-Claimants from any and all losses, liability, damages, causes of actions, costs and expenses, including attorneys' fees, asserted by any person, government or agency arising out of the incidents set forth in the complaint filed in the Superior Court of California, County of Sonoma, Case No. SCV-256863. (Agreement, ¶4.3, See Declaration of Bryan L. Malone, ¶7)

The Settlement Agreement contains the following language, relevant and material to this action:

> 1.1    For the consideration set forth in § 2.0, Plaintiff, DEBORAH CULLEN, for herself and her heirs, agents, estates, servants, successors, administrators, and assigns, hereby releases and forever discharges the Defendants, and anyone who may be liable for alleged events between Plaintiff and Defendants prior to the date of this agreement, including but not limited to their respective subsidiaries, parent corporations, principals, agents, owners, insurance carries, attorneys, employees, volunteers, employers, members, shareholders, partners, contractors, board members, and representatives, from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of services, expenses, and compensation of any nature whatsoever, whether based on tort, contract, or other theory of recovery, which the Plaintiff now has or which may hereafter accrue or otherwise may be acquired, on account of, or may in any way grow out of events involving Plaintiff and Defendant including those described in the action identified within Recital A above, including, but not limited to any and all known or unknown claims for property damage, and/or bodily and personal injuries to the Plaintiff, or any future claim of Plaintiff's representatives or heirs, which have resulted or may result from the alleged acts or omissions of Defendants or others, including defendants' subsidiaries, parent corporations, principals, agents, owners, insurance carriers, employees, employers, attorneys, board members, and representatives

> . . .

> 1.5 Plaintiff expressly waives all rights she has, or may have, under § 1542 of the Civil Code of California and similar laws of any state or territory of the United States or other jurisdictions. § 1542 of the Civil Code of California provides as follows:

2

<u>General Release – Claims Extinguished</u>. A general release does not extend to claims which the creditor does not know or expect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

1.6 This release specifically applies to any individual and/or representative claims of whistleblower retaliation pursuant to the Federal False Claims Act and the California False Claims Act (31 U.S.C. § 3730(h)) and the California False Claims Act (Cal. Gov. Code § 12653). This Release does not extend to any claim or action, known or unknown, by the United States or the State of California, or to any reward paid by the United States or the State of California, pursuant to the Federal False Claims Act (31 U.S.C. §§ 3729 et seq.), the California False Claims Act (Cal. Gov. Code §§ 12650 et seq.), or any other federal or state statute or regulation whereby a government entity claims entitlement to recover funds and pays to anyone a reward for such recovery.

. . .

4.1 Plaintiff represents and warrants that no person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement, Plaintiff has the sole right and exclusive authority to execute the Settlement Agreement, and she has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement.

4.2 Plaintiff agrees to satisfy from the proceeds of this settlement and be solely responsible for any and all liens, rights of subrogation, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorney's fees, whatsoever asserted by, allegedly by or on behalf of, sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits provider, health care provider, disability or insurance benefits provider, workers compensation provider, Medicare, Medicaid or any other entity arising in whole or in part out of the is [s.i.c.], or in any way connected to the action and its allegations.

4.3 As a further consideration and inducement for this settlement, plaintiff agrees to defend, indemnify, protect and hold the released parties harmless from any and all liens, rights of subrogation, indemnification claims, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorney's fees whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits provider, workers compensation carrier, Medicare, Medicaid, Medi-Cal or any other entity arising in whole or in part out of the incident(s), or in any way connected to the allegations in this action. (emphasis added)

The United States District Court, Northern District of California, on December 7, 2016, ordered this *qui tam* case unsealed. (Declaration of Bryan L. Malone, ¶9)

/ / /

/ / /

3

Prior to such Order, Relator and Relator's counsel did not disclose the *qui tam* case to anyone affiliated with ABC and PALYO. (Declaration of Bryan L. Malone, ¶¶2-3; Declaration of William Palyo, ¶4)

On February 7, 2017, Defendants ABC and PALYO were served the unsealed *qui tam* Complaint. (Declaration of Bryan L. Malone ¶10)

On March 3, 2017, Defendants ABC and PALYO served their Answer to the *qui tam* Complaint, together with a Counterclaim seeking indemnity, pursuant to § 4.3 of the settlement agreement executed on September 14, 2016, *supra*.

On March 23, 2017, Relator filed, pursuant to C.C.P. § 425.16, a special motion to strike ABC and PALYO's counterclaim.

### III.  LEGAL AUTHORITY

California Code of Civil Procedure § 425.16 states in pertinent part:

> (a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, ***this section shall be construed broadly***.

> (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the Plaintiff has established that there is a probability that the Plaintiff will prevail on the claim...

> (c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs...

> (d)  This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

> (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue' includes:... (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an

4

interest of public interest; (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f)The special motion may be filed within 60 days of the service of the complaint...

(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay in discovery shall remain in effect until notice of entry of the order ruling on the motion... [Emphasis added]

## IV.   LEGAL ARGUMENT

Strategic Lawsuits Against Public Participation, known as "SLAPP" suits are often brought for "'purely political purposes'" in order "to obtain an economic advantage over the opposing party, not to vindicate a legally cognizable right of the plaintiff.'" *Id.* (quoting *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, and *Wilcox v. Superior Ct. (Peters)* (1994) 27 Cal.App.4th 809, respectively. "While SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPPs are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox*, 27 Cal. App 4th 809, (quoting Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envt'l L. Rev., 3, 5-6, 9 (1989)). *Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973 *(C.D. Cal. 1999).*

Special motions to strike do <u>not</u> apply to numerous actions, including the instant case. Special motions to strike do not apply to enforcement actions, like this action, brought on behalf of The People of the State of California. Nor do special motions to strike apply to causes of action arising under federal statutes.

A special motion to strike pursuant to §425.16 ordinarily requires the Court to engage in a two-step evaluation process. First, the moving party bears the burden of establishing that the challenged claims arise from protected activities. It is sufficient to make a *prima facie* showing that the suit arises from an act or acts the moving party made in connection with a public issue. *See, e.g., Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 317; *Padres, L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 508-09; *The Traditional Cat Assoc., Inc. v. Gilbreth* (2004) 118 Cal.App.4th 392,

**COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16**

397. It is not necessary for the moving party to prove the claimant intended to chill involvement by filing the lawsuit as long as the claims fall within the purview of the protected activities. *Dickens v. Provident Life and Accident Ins. Co.* (2004) 117 Cal.App.4th 705. If the first element is satisfied, the opposing parties must then prove they have a probability of prevailing on the underlying claim or the case is dismissed. *See, e.g., Slaney, supra, at 317; Padres, L.P., supra,* at 508-09.

**A.    Relator's Motion to Strike Must Fail Because C.C.P. § 425.16 Does Not Apply to Enforcement Actions Brought in the Name of the United States and of the People of The State of California.**

Plaintiffs' Complaint, filed on March 12, 2017, is a *qui tam* action expressly brought on behalf of The United States and The People of State of California. C.C.P. § 425.16(d) exempts from its coverage civil enforcement actions brought in the name of The People of The State of California. See CCP § 425.16(d). Because a public prosecutor's enforcement action is not motivated by any attempt to gain a personal advantage over the defendant, the anti-SLAPP statute does not apply to cases like the instant one, brought on behalf of The United States and The State of California. See *City of Long Beach v. California Citizen's for Neighborhood Empowerment* (2003) 111 Cal.App.4th 302; *People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 446-447. Because Plaintiffs' Complaint, on its face, clearly demonstrates that it is brought on behalf of The United States and The People of the State of California, the anti-SLAPP statute does not apply.

**B.    Because Plaintiffs' Federal Claims Brought Under the Court's Federal Question Jurisdiction Are Not Subject to CCP § 425.16, Relator's Motion To Strike Must Fail.**

Plaintiffs' Complaint contains two federal claims based on alleged violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B). Code of Civil Procedure § 425.16 does not apply to federal question claims brought in federal court because such an application would frustrate federal substantive rights. *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC.* 634 F.Supp.2d 1009 (N.D. Cal. 2007). See *Globetrotter Software, Inc. v. Elan Computer Group, Inc.* 63 F.Supp.2d 1127 (N.D. Cal. 1999), *New Net, Inc. v. Lavasoft* 356 F.Supp.2d 1190 (C.D. Cal. 2004)

Moreover, because the discovery-limiting aspects of C.C.P. § 425.16(f) and C.C.P. § 425.16(g) collide with the discovery-allowing aspects of Federal Rule of Civil Procedure 56, these

**COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16**

aspects of subsections C.C.P. § 425.16(f) and C.C.P. §425.16(g) cannot apply in federal court. When a state procedural rule conflicts with a federal rule of civil procedure, the federal rule generally controls. *Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973(C.D. Cal. 1999).

Notably, Plaintiff's counsel previously rejected Defendants' meet and confer effort to take Plaintiff's deposition before hearing on Defendants' Motion, which is not permitted under the federal rules. (See Declaration of Bryan Malone at ¶11.)

**C.     The Cases Relied Upon By CULLEN Are Inapposite and Support ABC and PALYO.**

Relator CULLEN'S reliance upon *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 960 (9th Cir. 1995) is inapposite. In *Green,* the Court held that a release agreement executed after[1] a *qui tam* action was filed, violated public policy and was unenforceable. The Court reasoned that the release singed by the plaintiff could not bar the plaintiff's *qui tam* lawsuit because the public policy favoring whistleblowing outweighed the public policy encouraging settlement. *Id.* at 969.

The Court in *United States ex rel. Hall v. Teledyne Wah Chang Albany* 104 F.3d 230 (9th Cir. 1997) distinguished *Green* and held it inapplicable. In *Hall,* both Hall (the relator-employee) and Teledyne (his former employer) notified the government of Hall's complaints concerning alleged defects in Teledyne's manufacturing process for sheets for nuclear fuel rods. The NRC (Nuclear Regulatory Commission) investigated Hall's charges and determined that the sheets were in accordance with customer requirements. While the NRC investigation was pending, Hall sued Teledyne in state Court, claiming that he was wrongfully terminated for whistleblowing. Hall subsequently executed a broadly worded general release as part of the settlement of that action. The Ninth Circuit held that the release executed by Hall was enforceable to bar Hall's subsequent *qui tam* action against Teledyne. The Court reasoned that the concerns underlying the *Green* case were not implicated because in *Hall*, the government "had full knowledge of the Plaintiff's charges and had investigated them before Hall and Teledyne settled." *Id.* at 230. Hence, the release agreement signed by Hall was enforceable.

---

[1] In the present case, the *qui tam* action was filed <u>before</u> the Release and Settlement Agreement.

In the instant case, just like *Hall,* the release was executed after the government already had knowledge of the *qui tam* action. (See Declarations of Bryan L. Malone and William J. Palyo.) Hence, there was no bar to the enforcement of the release. CULLEN'S speculation that there is no probability that ABC and Palyo will prevail is negated by the holding in *Hall.*

**D.    The Counter-Claim Filed by ABC and William Palyo Does Not Arise or Emanate from Protected Speech**

The Court, in considering a motion to strike under C.C.P. § 425.16, must engage in a two-part inquiry. First, the moving party must make a *prima facie* showing that the plaintiff's lawsuit arises from activity protected by the anti-SLAPP statute. C.C.P. § 425.16(b)(1) The critical inquiry is whether the plaintiff's cause of action is based on activities in furtherance of free speech or the right of petition. *Flores v. Emerich & Pike* 416 F.Supp.2d 885 (E.D. Cal. 2006). C.C.P. § 425.16, the anti-SLAPP statute "strategic lawsuit against public participation," applies only when the claims themselves arise from an exercise of a constitutionally protected right. A person does not have a constitutionally protected right to file a complaint that is unsupported by the facts. The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish that his or her actions are constitutionally protected under U.S. Constitution, 1st Amendment, as a matter of law. Instead, a court must generally presume the validity of the claimed constitutional right in the first step of the required analysis, and then permit the parties to address the issue in the second step of the analysis if necessary. Otherwise, the second step would become superfluous in almost every case, resulting in an improper shifting of the burdens.

Although a cross-complaint may be subject to a C.C.P. § 425.16 motion, certainly, not every cross-complaint qualifies as a strategic lawsuits against public participation (SLAPP) suit.

In *City of Cotati v. Cashman* 29 Cal.4th 69 (2002) the California Supreme Court considered the applicability of C.C.P. § 425.16 to a complaint for declaratory relief. The owners of a mobile home park filed an action against the City of Cotati in federal court challenging the legality of a city ordinance that established a mobile home rent stabilization policy. The City of Cotati meanwhile sued the defendant mobile home park owners in state court for declaratory relief, alleging that the

**COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16**

rent stabilization ordinance was constitutional. The defendant owners filed a motion to strike pursuant to C.C.P. § 425.16. The trial court granted the owners' special motion to strike, holding that the City's declaratory relief action was a SLAPP suit. The California Supreme Court, affirming the judgement of the California Court of Appeal held that the trial court erred in that the City's state court action did not arise from protected constitutional speech or petition, but rather from the underlying controversy – the constitutionality of the rent stabilization ordinance. The California Supreme Court, in holding that the City's declaratory relief action was not a SLAPP action construed the meaning of the term "arising from" as used in C.C.P. §425.16:

> To construe "arising from" in § 425.16(b)(1) as meaning "in response to" as owners have urged, would in effect render all cross-actions potential SLAPPs. We presume the legislature did not intend such an absurd result. (Citation omitted)
>
> Absurdity aside, to suggest that all cross-actions arise from the cause of action in response to which they are pled, would contravene the statutory scheme governing cross-complaints. (Citation omitted)
>
> The legislature expressly provided that a cross-action may "arise out of the same transaction, occurrence or series of transactions or occurrences as the cause of action which the plaintiff alleges," rather than out of that cause of action itself. Indeed, owners' counsel, when arguing before the trial court, acknowledged City's action would not be a SLAPP if City had filed its counter-claim in owners' federal action. Nor do owners persuasively distinguish responsive litigation, generally. The anti-SLAPP statute, itself treats complaints identically with cross-complaints. (Citation omitted)
>
> Just as a cross-complaint often "arises out of the same transaction, occurrence or series of transactions or occurrences as the cause of action which the plaintiff alleges." (Citation omitted)
>
> So may a responsive but independent lawsuit arise from the same transaction or occurrence alleged in proceeding lawsuit without necessarily arising from that earlier lawsuit itself. (Citation omitted) *Id.* at 77-78

A defendant may file a cross-complaint against the plaintiff for any existing cause of action regardless of its nature and origins. C.C.P. § 428.10(a). However, only those cross-complaints alleging a cause of action arising from the act of filing the cross-complaint against the plaintiff and the subsequent litigation would potentially qualify as a SLAPP action. C.C.P. § 425.16(b)(d). *Church of Scientology v. Wollersheim* (1996) 42 Cal. App.4th 628. The mere fact that ABC and William Palyo filed a counterclaim against CULLEN after CULLEN filed her federal lawsuit does <u>not</u> mean it arose from that activity. "The anti-SLAPP statute cannot be read

to mean that "any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under § 425.16, whether or not the claim is based on conduct in exercise of those rights." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 [see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal. 4th 1106, 1114 ["arise from" means "based upon"].) See *City of Cotati v. Cashman* (2002) 29 Cal. 4th 69.

If the defendant is able to make a threshold showing, the burden then shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. *Id.*

In the instant case, the Counter-Claim alleges CULLEN'S failure to indemnify ABC and PALYO in compliance with their settlement agreement. The anti-SLAPP statute does not apply to the Counter-Claim asserted by ABC and PALYO because the Counter-Claim charges only an entitlement to indemnity and does not involve any statement, writing or conduct that implicates the exercise of free speech. Numerous cases hold that a cause of action charging failure to indemnify and breach of a settlement agreement does not arise from protected activity. *Applied Business Software v. Pacific Mortgage Exchange* (2008) 164 Cal.App.4th 1108 (Held that breach of settlement agreement is not protected activity). *See also*, *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940 (Held that lawsuit between a landlord and a tenant alleging breach of a settlement agreement and related tortious conduct did not constitute protected activity to which C.C.P. § 425.16 applied); *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 (Held that lawsuit charging breach of settlement agreement and declaratory relief did not arise from protected activity under the anti-SLAPP statute).

E.   **Relator CULLEN Mischaracterizes Indemnity as Free Speech; anti-SLAPP Does Not Apply Here**

Under California law, an "indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." Civ. Code, § 2772. "Indemnity" may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010.) "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good

10

faith, and in the exercise of a reasonable discretion . . . ." (Civ. Code, § 2778, subd. 3.) An indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person.

Indemnity may arise by virtue of express contractual language establishing a duty in one party to save another harmless upon occurrence of specified circumstances. See, *E. L. White, Inc. v. City of Huntington Beach* (1978) 121 Cal.3d 497, 507. Civil Code § 2772 defines indemnity as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." "Express indemnity refers to an obligation that arises by virtue of express contractual language establishing a duty in party to save another harmless upon the occurrence of specified circumstances." *E. L. White*, *supra*, 21 Cal.3d at 507. "Express indemnity generally is not subject to equitable considerations or a joint legal obligation to the injured party; rather, it is enforced in accordance with the terms of the contracting parties' agreement." *Prince v. Pacific Gas & Elec. Co.* (2009) 45 Cal.4th 1151, 1158.

In its pivotal decision in *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, the California Supreme Court held that a contractual indemnitor owes a duty to defend the indemnitee as soon as the indemnitee tenders its defense to the indemnitor. In *Crawford*, J. M. Peters Co., a developer, filed a cross-complaint against Weather Shield; the subcontractor who supplied wood-framed windows for a residential construction project. Weather Shield promised "(1) to indemnify and save [JMP] harmless against all claims for damages, . . . loss, . . . and/or theft . . . growing out of the execution of [Weather Shield's] work and (2) at [its] own expense to defend any suit or action brought against [JMP] founded upon the claim of such damage, . . . loss or theft." *Id*. at 547-548. Following trial, the jury held that Weather Shield was not liable for any construction defect. Notwithstanding that Weather Shield did not have a duty to indemnify JMP, the trial court concluded that Weather Shield had an obligation to defend JMP against the homeowners' action "insofar as those claims concerned the windows supplied by Weather Shield, regardless of whether Weather Shield was ultimately found negligent." *Crawford, supra*, 44 Cal.4th at 549.

The California Supreme Court, relying upon Civil Code § 2778, affirmed the trial court and Court of Appeal opinions:

11

We agree with the Court of Appeal majority that, even if strictly construed in Weather Shield's favor, these provisions expressly, and unambiguously, obligated Weather Shield to defend, from the outset, any suit against JMP insofar as that suit was 'founded upon' claims alleging damage or loss arising from Weather Shield's negligent role in the Huntington Beach residential project.  Weather Shield thus had a contractual obligation to defend such a suit even if it was later determined, as a result of this very litigation, that Weather Shield was not negligent.

We focus on the particular language of the subcontract.  Its relevant terms impose two distinct obligations on Weather Shield.  First, Weather Shield agreed to 'indemnify and save [JMP] harmless against all claims for damages to persons or property and claims for loss, damage and/or theft  . . . growing out of the execution of [Weather Shield's] work.'  Second, Weather Shield made a separate and specific promise 'at [its] own expense to defend *any suit or action* brought against [JMP] *founded upon* the claim of such damage . . . loss, . . . or theft.'" (Italics added.)

A contractual promise to "defend" another against specified claims clearly connotes an obligation of active responsibility from the outset for the promisee's defense against such claims.  The duty promised is to render, or fund, the service of providing a defense, on the promisee's behalf – a duty that necessarily arises as soon as such claims are made against the promisee, and may continue until they have been resolved.  This is the common understanding of the word "defend" as it is used in legal parlance . . ."

*Id*. at 554.

In this case CULLEN expressly agreed in section 4.3 of the parties settlement agreement:

As a further consideration and inducement for this settlement, plaintiff agrees to defend, indemnify, protect and hold the released parties harmless from any and all liens, rights of subrogation, indemnification claims, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorney's fees, whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits provider, workers compensation carrier, Medicare, Medicaid, Medi-Cal or any other entity arising in whole.

CULLEN's motion mischaracterizes the nature of the indemnity claim and cavalierly dismisses it as "patently frivolous" (See moving papers at 10: 5-9). However, there is no legal argument provided to support CULLEN's argument that the indemnification provision is somehow unenforceable.

In fact, the indemnification provision is enforceable and broadly provides indemnification from the moment a claim is made and unequivocally applies to all losses, liability, actions, damages causes of action, judgments, expenses, including attorneys fees.  Indeed, CULLEN

12

should indemnify ABC and PALYO for all costs incurred, in the amount of $3,875.00 in opposing the Special Motion to Strike.

**F.     Relator Cannot Establish That There Is "No Probability" That ABC and PALYO Will Prevail on Their Counter-Claim.**

In the very unlikely event that Relator is somehow able to demonstrate that the counter-claim filed by ABC and PALYO involves "protected conduct," CULLEN will not be able to prevail on her Motion unless she demonstrates that the counter-claim lacks even "minimal merit." *Navallier v. Sletten* (2002) 29 Cal.4th 82, 88-89.

In this case, contrary to Relator's gross misperception, ABC and PALYO have an enforceable indemnity agreement against CULLEN. Although CULLEN asserts that it is against public policy to interfere with Plaintiffs' *qui tam* claim, there is no prohibition in requiring CULLEN to bear the financial burden to indemnify ABC and PALYO as she expressly agreed to do in the settlement agreement. Accordingly, there is no bar to requiring indemnification from CULLEN to ABC and PALYO and as such, there is more than a reasonable likelihood that ABC and PALYO will prevail on the merits of their counter-claim.

## V.  CONCLUSION

Based on the authorities discussed herein and the accompanying Declarations of William Palyo and Bryan L. Malone, Defendants ASSOCIATION OF BEHAVIOR CONSULTANTS and WILLIAM PALYO respectfully request the Order of the Court denying CULLEN'S Special Motion to Strike.

DATED:  April 5, 2017                    **LEVANGIE LAW GROUP**

By:_____
MICHAEL J. LEVANGIE
BRYAN L. MALONE
Attorneys for Defendants/Counter-Claimants
ASSOCIATION OF  BEHAVIOR CONSULTANTS
and WILLIAM J. PALYO

13

*Re: United States of America, et al. v. Association of Behavior Consultants, et al.*
United States Northern District Court Case No. 15-cv-01188-EDL

## PROOF OF SERVICE

I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of 18 years and not a party to the within action or proceeding. My business address is 2021 N Street, Sacramento, California, 95811, which is located in the county in which the within-mentioned service occurred.

On this date, I served the following document(s):  **DEFENDANTS/COUNTER-CLAIMANTS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM PALYO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RELATOR DEBORAH CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM OF DEFENDANTS/COUNTER-CLAIMANTS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM J. PALYO, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16, AND TO AWARD STATUTORY ATTORNEY FEES** to each addressee named below:

| | |
|---|---|
| Daniel R. Bartley, Esq.<br>Pruneyard Towers<br>1999 S. Bascom Avenue Ste 700<br>Campbell.CA 95008<br>DanielBartleyLaw@aol.com<br>**ATTORNEY FOR PLAINTIFF/RELATOR DEBORAH CULLEN** | |

[X]    (EFC) A true copy of said document(s) was/were e-filed with the U.S. District Court, Northern District of California.  Once e-filed, these documents are transmitted through the court's ECF server to the interested parties to this action.

| | |
|---|---|
| Ann Marie Reding, Esq.<br>Assistant United States Attorney<br>450 Golden Gate Avenue Box 36055<br>San Francisco CA 94102-3495<br>Annie.reding@usdoj.gov<br>**ATTORNEYS FOR**<br>**UNITED STATES OF AMERICA** | Suneeta D. Fernandes<br>Deputy Attorney General<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102-7004<br>Suneeta.fernandes@doj.ca.gov<br>**ATTORNEYS FOR**<br>**STATE OF CALIFORNIA** |

[X]    (MAIL) A true copy of said document(s) was placed in a sealed envelope on this date, addressed as indicated above, and deposited in regularly maintained office mail for collection, postage and same-day delivery to the United States Postal Service at Sacramento, California with postage thereon fully prepared for delivery to the addressee(s).

Executed on April 6, 2017, at Sacramento, California.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

*Holly Marquard*
Holly Marquard

14

COUNTER-CLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CULLEN'S MOTION TO STRIKE THE COUNTERCLAIM, PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, C.C.P. § 425.16