DANIEL ROBERT BARTLEY (SBN 79586)
BARTLEY LAW OFFICES
Pruneyard Towers – Tower II
1999 South Bascom Avenue, Suite 700
Campbell, CA  95008-2205
Reception Telephone 408-879-2600
Attorney Direct Telephone 415-847-2060
Attorney Fax 415-842-0300
E-mail DanielBartleyLaw@aol.com

Attorneys for Deborah Cullen, Relator

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO)

| | |
|---|---|
| UNITED STATES and STATE OF CALIFORNIA ex rel. DEBORAH CULLEN,<br><br>               Plaintiffs,<br><br>vs.<br><br>ASSOCIATION OF BEHAVIOR CONSULTANTS, WILLIAM J. PALYO, and DOES 1-20,<br><br>               Defendants.<br><br><u>and</u><br><br>ASSOCIATION OF BEHAVIOR CONSULTANTS and WILLIAM J. PALYO,<br><br>               Cross-Plaintiffs,<br><br>vs.<br><br>DEBORAH CULLEN,<br><br>               Cross-Defendant. | Case No. 15-cv-01188 JCS<br><br>**RELATOR'S POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION FOR ATTORNEY FEES INCIDENT TO DISMISSAL OF THE FRIVOLOUS AND RETALIATORY COUNTERCLAIM OF DEFENDANTS AND CROSS-PLAINTIFFS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM J. PALYO**<br><br><br>Judge:      Hon. Joseph C. Spero<br>             Chief U.S. Magistrate Judge<br>Date:       January 10, 2020<br>Time:      9:00 A.M.<br>Place       U.S. Courthouse<br>             450 Golden Gate Avenue<br>             15th Floor, Courtroom G<br>             San Francisco, CA 94102 |

**INTRODUCTION**

This is Relator Deborah Cullen's brief in support of her motion for attorney fees incident to the dismissal of the Counterclaim of Defendants and Cross-Plaintiffs Association of Behavior Consultants ("ABC") and William J. Palyo ("Palyo")

The 11th-hour voluntary dismissal by ABC and Palyo of their Counterclaim against Relator is new and persuasive evidence from which the Court properly may find that such pleading is, and from its inception always has been, without merit; that ABC's and Palyo's opposition to Relator's motions to dismiss such Counterclaim as in violation of the California Anti-SLAPP Law, FRCP Rule 11, and FRCP Rule 12(b), was for dilatory purposes; that the Court may and should not rule in favor of Relator on her motion for summary judgment on such Counterclaim; and that the Court, in exercise of its inherent power, may and should award Relator her attorney fees for having to defend against such Counterclaim; and that the Court may and should set a briefing schedule for presentation of Relator's itemized fees.

**NATURE OF CASE**

This is a False Claims Act ("FCA") *qui tam* whistleblower action alleging billing fraud, in violation of the FCA (31 U.S.C. §§ 3729, et seq.) and the California False Claims Act  ("CFCA") (Cal. Gov. C. §§ 12650 et seq.), by her former employer Association of Behavior Consultants ("ABC") and its principal and owner, William J. Palyo ("Palyo").

Defendants over the duration of this case pursued a frivolous and retaliatory Counterclaim  September 14, 2016, Settlement Agreement and Release ("Agreement"), executed in settlement of Relator's individual and personal employment law case.

**PROCEDURAL HISTORY**

On March 12, 2015, Relator filed, under seal, her *qui tam* Complaint on behalf of the U.S. and the State of California, via which she accuses ABC and Palyo of billing fraud.  ABC is a behavior intervention developer and behavior intervention implementer to children suffering from developmental disabilities. Relator, when at ABC, was a behavioral support specialist, doing

hands-on work with disabled children and autistic children.  (Complaint, Doc. 1, ¶¶ 1-10.)

On March 1, 2017, ABC and Palyo filed an Answer and Counterclaim. (Doc. 22.)  The Counterclaim is based entirely on a written "Confidential Settlement Agreement . . ." via which Relator settled  the remaining three causes of action of her personal employment law action (*Cullen v. Association of Behavior Consultants*, Case No. SCV 256863, in the Superior Court of Sonoma County, California.

The gravamen of the Counterclaim is a tongue-in-cheek contention that the Release's Section 4.3, a boilerplate medical liens indemnification clause, like that routinely used in the release in each and every personal injury case settlement agreement, obligated Relator Cullen to indemnify ABC and Palyo for the over $1.5 million in damages, before trebling and penalties, that Defendants would have to pay out for fraudulent billing claims to the United States and the State of California under the CFCA and the FCA, were Relator's qui tam claims allowed to be decided in her favor by a jury.

ABC and Palyo assertion and prosecution of their Counterclaim was utterly outrageous because Section 1.6 of the Agreement *expressly declares* that it does not apply to FCA and CFCA claims on behalf of the U.S. and the State of California.

On March 23, 2017, Relator filed a an anti-SLAPP motion to strike pursuant to the California Anti-SLAPP Statute (Cal. Code Civ. Proc. § 425.16), on the grounds that such Counterclaim was retaliation for Relator's exercise of protected free speech (filing this *qui tam* case) and that such Counterclaim has no probability of prevailing on the merits.  (Docs. 28, 29.)

On May 16, 2017, at 9:00 a.m., the Court (Hon. Magistrate Judge Laporte) heard Relator's anti-SLAPP motion.  Relator's counsel, due to a calendaring error by him, had such

\\\

hearing posted for the 1:30 p.m. hearing time that the Court had set for the preceding week, May 9, in a Clerk's Notice.  (Doc. 41).

On May 18, 2017, the Court entered an order denying Relator's anti-SLAPP motion to strike the Counterclaim and denying her motion for attorney fees, on the ground had "not met all the requirements of Code of Civil Procedure § 425.16 [the anti-SLAPP statute]."  (Doc. 47.)

Neither in the order (Doc. 47) nor on the record of the May 16 hearing (see transcript, Doc. 49) did the Court identify specifically how Relator's anti-SLAPP motion had "not met all the requirements of Code of Civil Procedure § 425.16 [the anti-SLAPP statute]".

On June 13, 2017, Relator filed a motion, pursuant to Rule 60(b)(1) and (b)(6), for relief from the subject order denying Relator's anti-SLAPP motion to strike. (Docs. 50-53.)

On June 16, 2017, Relator filed a motion to dismiss the subject Counterclaim pursuant to both Rule 12(b)(1) and 12(b)(6). (Docs. 54-57.)

On July 13, 2017, Relator filed a motion for Rule 11 sanctions, set for hearing on August 29, 2017. (Docs. 66-70.)

On July 25, 2017, the Court heard Relator's Rule 60(b)(1), Rule 60(b)(6) Rule 12(b)(1), and Rule 12(b)(6) motions, and issued a minute order, taking such motions under submission. At the oral argument, the Court indicated that the Court at the summary judgment stage will provide detailed more rulings on Relators' motions. In response, Relator's counsel requested detailed rulings then and there, for appellate review purposes, and apprised the Court that a court order denying an anti-SLAPP motion to strike is immediately appealable. (See Cal. Code Civ. P. § 425.16(i).)

On August 1, 2017, Relator followed with a Rule 56 motion for summary judgment as to Defendants' Counterclaim. (Doc. 72-78.) Supporting evidence included, inter alia, a Declaration by Relator's counsel (Doc. 74) and a Request for Judicial Notice, regarding the customary practice of using medical lien indemnification clauses in written agreement settling personal injury cases. (Doc. 76.)

On August 29, 2017, at the Court's urging, Relator withdrew her motion for summary judgment without a ruling by the Court, given the Court's statement that Relator should file a Declaration from a recognized and respected legal authority, such as the author of a hornbook. (Doc. 133.)

On February 13, 2019, Relator filed the Declaration Jacklyn Demar, the Director of Legal Education at the highly esteemed Taxpayers Against Fraud Education Fund, opining that a medical lien indemnification clause in a settlement of an employment law case is not a promise to

indemnify an FCA defendant for damages and attorney fees it might have to pay in a False Claims Act qui tam case brought by that individual.  (Doc.  114.)

On May 9, 2019, the Court denied Relator's motion for summary judgment on the Counterclaim.  (Doc. 133.)


## SUMMARY OF ARGUMENT

Relator strongly opposes the subject effort by Defendants to quietly dismiss their retaliatory and baseless Counterclaim and slither away without consequences after such Counterclaim has been used effectively to do dirty work of diverting the Court's attention from Relator's *qui tam* claim.  The subject Counterclaim was without merit, was frivolous, and was retaliatory, because:

(1) The Court did not have subject matter jurisdiction over Defendants' Counterclaim.

(2) The subject Counterclaim failed to state a claim upon which relief may be granted.

(3) The ABC/Palyo Counterclaim was based on a personal injury medical liens indemnification clause in a written settlement agreement and release in Relator's personal employment law case in state court, which written agreement on its face declares it does not apply to FCA claims of the United States and CFCA claims of the State of California.

(4) Extraordinary policy implications prohibit counterclaims for contribution and indemnity in *qui tam* cases.

(5) Counterclaims asserting contractual remedies are barred from *qui tam* cases.

(6) The subject ABC/Palyo Counterclaim had, and has, zero probability of prevailing on the merits.

(7) Defendants' Counterclaim was presented for the improper purpose of retaliating against protected speech (Relator's action in bringing this *qui tam* action), in violation of 21 U.S.C. § 3730(h) and Cal. Gov. C. § 12653, and in violation of Cal. Code Civ. P. § 425.16.

(8) The claims and legal contentions set forth in the subject Counterclaim are not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and

(9) The allegations and other factual contentions of the subject ABC/Palyo Counterclaim are based on the four corners of the subject state court Settlement Agreement, whose sections, when read together, afford to Defendants zero evidentiary support.

## ARGUMENT

### A.     THE FALSE CLAIMS ACT IN GENERAL.

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, prohibits knowingly submitting to the federal government a false or fraudulent claim for payment.  The FCA authorizes whistle-blowing private citizens to file suit after dis-covering that the federal government has been defrauded.  The FCA was originally known as "Lincoln's Law," with roots in the American Civil War, and, before that, England.  The term "qui tam" (pronounced "kwee" in Latin) is short for the Latin phrase *"qui tam pro domino rege quam pro se ipso in hac parte sequitur,"* which translates as "he who pursues this action on our Lord the King's behalf as well as his own").  The FCA is the Government's "primary litigative tool for combating fraud" against the United States.  See S. Rep. No. 345, 99th Cong., 2d Sess. at 2 (1986), *reprinted in* 1986 ISKCON 5266; *Kelly v. Boeing Co.,* 9 F.3d. 743, 745 (9th Cir. 1993).  In the year 2014 alone, the FCA was used to recover nearly $5.7 billion in taxpayer funds that had been taken via false claims.  *See* Press Release, Office of Public Affairs, United States Department of Justice Recovers Nearly $6 Billion from FCA Cases in Fiscal Year 2014 (November 20, 2014) (http://www.justice.gov/opa/ pr/justice-department-recovers-nearly-6-billion-false-claims-act-cases-fiscal-year-2014).

FCA lawsuits may be brought by the Attorney General or by an individual *qui tam* relator. 31 U.S.C. § 3730.  An individual brings a civil action under the FCA "for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C.§ 3730(b)(1). The individual's action is termed a *"qui tam"* lawsuit, and the person bringing the action is referred to as a "relator." *Kelly,* 9 F.3d at 745.  The FCA imposes a civil penalty of between $5,500 and $11,000 for each false claim, plus treble damages and statutory attorney fees. 31 U.S.C. § 3729(a).  The incentive for the relator (individual or

corporation) who brings suit under the FCA is entitlement to a "relator's share" of up to 30% of the recovery.  31 U.S.C. § 3730(d).

An FCA qui tam complaint is filed in federal court under seal and is not initially served on the defendant.  The complaint is delivered, together with a "disclosure statement" containing all facts material to the action, to the U.S. Department of Justice and the U.S. Attorney's Office in the district in which the complaint is filed.  The Government then has a period of time within which to investigate the relator's allegations in the complaint and decide whether to "intervene in" or "join" (*i.e.,* take over prosecution of) the action.  If the Government declines to "intervene in" or "join" the qui tam lawsuit, the relator may pursue the action alone. The declination to intervene are no reflection on the case merit.  In 1999, U.S. Congressman Howard Berman, one of the two sponsors of the 1986 Amendments to the False Claims Act, declared:

> One of the principal goals of the 1986 Amendments was to ameliorate the "lack of resources on the part of Federal enforcement agencies." S. Rep.  99-345 at 7. That was one of the reasons we strengthened the qui tam provisions of the law. Thus, **we expected some meritorious cases to proceed without the Government's intervention, and we fully expected that the Government and relators would work together in many cases to achieve a just result.**  By dismissing relators based on spurious interpretations of the [FCA], the courts are depriving the Government of these additional resources.  And those resources have been considerable.

*See* 106 Cong. Rec. E1546-E1548 (1999) (statement of Rep. Berman) (emphasis added).

After a notice of decision not to intervene, the Government retains the right to intervene at a later date upon a showing to the court of good cause.

Many states, California included, have state false claims acts that largely track the federal FCA and that serve to protect states and their subdivisions.  The CFCA is at Cal. Gov. C. §§ 12650 et seq.  *See, generally:*  Liftman, H., and Zweicker, J., "A New Practitioner's Guide to the Federal False Claims Act . . .," January 25, 2012, American Bar Association, at http://www.americanbar.org/content/dam/aba/administrative/litigation/materials/sac_2012/25-1_fca_101_presentation.authcheckdam.pdf; "The False Claims Act, a Primer," April 22, 2011, United States Department of Justice Civil Fraud Section http://www.justice.gov/sites/default/-files/civil/legacy/2011/04/22/-C-FRAUDS_FCA_Primer.pdf; and "False Claims Act Overview," TAF Education Fund, July 24, 2015, http://www.taf.org/resource/fca/false-claims-act-overview.

The Supreme Court mandates a broad statutory interpretation of the FCA, because the

FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

In 1986, Congress amended the FCA to broaden the availability of the FCA to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." See S. Rep. No. 99-345, at 2 (1986), *reprinted in* 1986 ISKCON 5266.  The Congressional action was in response to judicial decisions taking a restrictive approach to the False Claims Act. See *Id.* at 4, reprinted in 1986 ISKCON at 5269.

The Federal Fraud Enforcement and Recovery Act of 2009 ("FERA"),  Pub. L. 111–21, S. 386, 123 Stat. 1617, further expanded the scope of the FCA.  FERA expanded the universe of companies potentially liable for FCA violations; it dramatically increased the consequences of failures to return overpayments; it extended whistleblower protections to non-employees and expanded the scope of whistleblower protections; and it revived the Government's ability to use Civil Investigative Demands ("CIDs"), which are powerful investigative tools.

## II.     THE COURT NEVER HAD SUBJECT MATTER JURISDICTION OVER DEFENDANTS' COUNTERCLAIM.

Federal courts are courts of limited jurisdiction and these limits, whether imposed by the Constitution or by Congress, cannot be disregarded or evaded. *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994); *Al Nieto v. Ecker*, 845 F.2d 868, 871 (9th Cir. 1988) (holding that a federal court's "power to adjudicate claims is limited to that granted by Congress, and such grants are not to be lightly inferred").  Federal courts have original jurisdiction over cases that involve diversity of citizenship, a federal question, or cases to which the United States is a party. *Kokkonen*, 511 U.S. at 377 (1994). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).

Courts will not infer evidence supporting federal subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [the federal court's] limited jurisdiction."). The burden of proof on a claim of lack of federal jurisdiction is on the party asserting

jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). "If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous." *Campbell v. Handlery Union Square Hotel*, 2012 WL 3158840, at *2 (N.D. Cal. Aug. 2, 2012) (citation omitted). "On the other hand, if jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000." *Id.*

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).   A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Dismissal is appropriate when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).

A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

"The presence or absence of federal-question jurisdiction is governed by the 'well- pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Tort-based claims do not fall within the limited jurisdiction of federal courts. *Cobb v. Brede*, 2012 WL 33242, at *2 (N.D. Cal. Jan. 6, 2012), aff'd, 517 F. App'x 556 (9th Cir. 2013); *Hunter v. United Van Lines*, 746 F.2d 635, 644 (9th Cir 1984).

Thus, because Defendants' Counterclaim is based in state law, it is not properly before this Court as a federal question. *Davis v. Ford Motor Co.*, 2009 WL 250708, at *1 (N.D. Cal. Jan. 30, 2009).  To exercise federal question jurisdiction, the case must require the interpretation of the Constitution or laws of the United States or at least the implication of federal policy. The ABC/Palyo Conterclaim involves no interpretation of the Constitution or federal laws.

1

2

Further, with Relator, ABC, and Palyo all being residents of Sonoma County, California, there is no diversity jurisdiction.

3

4

5

Sonoma Superior Court is the forum having subject matter jurisdiction over alleged breach of the Settlement Agreement settling the state law claims pled by Deborah Cullen in her individual and personal employment law claims action in such state court.

6

7

8

Finally, there is no supplemental jurisdiction, since the real parties in interest are the two government entities, and Cullen's status is not that of an individual plaintiffl but rather is that of a "relator" on behalf of these two entities.  *See* 31 U.S.C. § 3730(b) and Cal. Gov. C. § 12653.

9

10

11

## III.   THE SUBJECT COUNTERCLAIM MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

12

13

14

15

16

17

18

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a).  Under Rule 12(b)(6), a party may move for dismissal based on the failure to state a claim upon which relief may be granted.  Via Rule 12(b)(6), Relator challenges the sufficiency of Defendants' Counterclaim, on the basis it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Dismissal is appropriate where the Counterclaim does not give the fair notice of a legally cognizable claim and the grounds on which it rests. *Id.,* at 555.

19

20

21

22

23

24

25

26

27

A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).   For these purposes, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); see also *Neitzke*, *supra,* 490 U.S. at 326.

28

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); see also *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering whether the ABC/Palyo Counterclaim is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the Defendants. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The allegations of the ABC/Palyo Counterclaim, even when accepted as true, are conclusory statements that directly and materially conflict with the Settlement Agreement upon which the Counterclaim is based.  Under these circumstances, the Counterclaim fails and should be dismissed with prejudice.

## IV.   THE ABC/PALYO COUNTERCLAIM IS FRIVOLOUS BECAUSE IT IS BASED ON A PERSONAL INJURY MEDICAL LIENS INDEMNIFICATION CLAUSE IN A SETTLEMENT AGREEMENT THAT ON ITS FACE DECLARES IT DOES NOT APPLY TO FCA CLAIMS OF THE UNITED STATES AND THE STATE OF CALIFORNIA.

Defendants' Counterclaim is patently frivolous because:

(1) It is based on an Agreement settling Relator Cullen's individual state court case against

ABC, which Agreement expressly declares it does not apply to "any claim or action, known or unknown, by the United States or the State of California, or to any reward paid by the United States or the State of California, pursuant to the Federal False Claims Act (31 U.S.C. §§ 3729 et seq.), the California False Claims Act (Cal. Gov. C. §§ 12650, or any other federal or state statute or regulation whereby a government entity claims entitlement to recover funds and pays to anyone a reward for such recovery." (*Id.,* Agreement, Section 1.6, at pp. 2-3.)

(2) It is predicated on the Agreement's boiler plate indemnification and hold-harmless clause pertaining to medical lien and subrogation claims by physicians, health insurers, and others holding liens related to Cullen's personal injury tort claims in Cullen's personal employment law case. (*Id.*, Agreement, Sec. 4.3, at p. 4.)   *See also* the "Relator's Fed. Rule of Evid. 201 Request for Judicial Notice of the Customary Practice and Course of Dealing in Regard to Use of Indemnification Clauses in Written Agreements Settling Personal Injury Cases, in Support of Relator's FRCP Rule 56 Motion for Summary Judgment as to Counterclaim of Defendants and Counterclaimants Association of Behavior Consultants and William J. Palyo.".

## V.   EXTRAORDINARY POLICY IMPLICATIONS PROHIBIT COUNTERCLAIMS FOR CONTRIBUTION AND INDEMNITY IN QUI TAM CASES.

The customary availability of counterclaims for defendants in ordinary litigation are placed in doubt when a qui tam is involved due to the extraordinary policy implications presented in the FCA, its 1986 amendments, and the Act's legislative history. Because relators are acting technically on behalf of the Government, and the clear policy embedded in the FCA is to encourage such private attorney general activity, allowing defendants to assert any manner of counterclaims against relators would discourage the initiation of qui tam suits.

From the outset, relators have been overwhelmingly successful in persuading federal judges that to recognize a right to seek contribution or indemnification by way of counterclaims in qui tam cases would be contrary to the spirit of the FCA.  This inclination is evident in the first case to discuss the question, *United States ex rel. Rodriguez v. Weekly Publications, Inc.*, 74 F. Supp. 763 (S.D.N.Y. 1947), which has set the pattern for subsequent judicial consideration of the

issue. In such case, the defendant was accused of cheating the Post Office Department, but the government declined intervention. Defendant then asserted a counterclaim for indemnification against relator Rodriguez on the basis that because his responsibilities included keeping abreast of new postal regulatory developments, any noncompliance by defendant was the direct result of relator's own negligence, and this breach of his duties could be remedied by indemnification plus attorneys' fees and expenses. *Id.*, 764, 768.  While confirming that the relator was an opposing party even though the litigation was brought in the name of the United States, the district court in *Rodriguez* nonetheless dismissed the counterclaim.  As the court explained, "To permit the counterclaim pleaded would set a precedent that would be a strong deterrent to the institution of genuine informer's actions." *Id.* at 769. The potential deterrence arises because relators who participated in or contributed to the fraud would be reluctant to bring an FCA action for fear that their involvement might lay the basis for counterclaim liability, since the defendant might allege, as here, that the relator was responsible for the predicate statutory infraction.  Further noted the court, since it was the intent of Congress to encourage qui tam actions, permitting such counterclaims to be filed against relators would be incompatible with the legislative objective.

Moreover, the district court in *Rodriguez* was entirely unsympathetic to the argument that defendant's counterclaim was compulsory and had to be asserted or deemed waived. Rather, "[i]f the defendant has a claim against the [relator] he should pursue his remedy in a direct action, thus permitting the qui tam action to proceed in accordance with statutory direction." *Id.* at 769. The issue whether a FCA defendant could counterclaim based on grounds unrelated to the qui tam complaint's fraudulent allegations was left open.

The *Rodriguez* decision has set the tone ever since in considering the question of asserting counterclaims for contribution or indemnification.  In the next major case decided on the issue, *Mortgages, Inc. v. United States District Court for the District of Nevada*, 934 F.2d 209 (9th Cir. 1990), involving federal loan guarantees, the defendant asserted counterclaims alleging that the relators "bear significant responsibility for the false statements in the loan applications." *Id.* at 212.  After reviewing the FCA and its legislative history, The Ninth Circuit in *Mortgages* concluded that there was no recognition in the FCA that qui tam defendants could seek indemnifi-

cation or contribution from relators. The 9th Circuit considered this point significant given *Texas Industries v. Radcliff Materials, Inc.*, 451 U.S.630, 639 (1981), denying counterclaims under the antitrust laws. Looking to the history of the FCA, the court concluded, "The FCA is in no way intended to ameliorate the liability of wrongdoer by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands'. Congress did not intend to create a right of action for contribution or indemnification under the FCA." *Id.* at 213.  Further, the congressional scheme embodied in the FCA is so comprehensive, courts are foreclosed from reading any federal common law right to assert counterclaims into the statute. *Mortgages* at 213-14.

Subsequent judicial consideration of the issue has echoed the early holdings that FCA defendants may not assert counterclaims for indemnification or contribution against relators. See, e.g., *United States ex rel. Stephens v. Prabhu*, 1994 WL 761237 (D. Nev. 1994).

Additionally, the ABC/Palyo Counterclaim violates Rule 11 because of the strong public policy against counterclaims in qui tam actions. It is well settled that qui tam defendants cannot bring counterclaims "for indemnification and contribution that are based on their liability under the FCA or have the same effect as offsetting FCA liability." *United States v. Campbell*, No. 08-1951, 2011 WL 43013, at *10 (D.N.J. Jan. 4, 2011); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 26 (D.D.C. 2007) (collecting cases).

If a defendant's counterclaim, as here, is predicated on the defendant's own liability, then its claims against a relator typically will allege that the relator participated in the fraud, or caused the defendant some damage by the act of being a relator, that is, by disclosing the defendant's fraud.  The first kind of action seeks contribution or indemnity, rights that are not provided by the FCA because they would deter relators, allow wrongdoers to shift their costs, and would disrupt the FCA'S intended framework of incentives and punishments. The second kind of action has the same effect of providing contribution or indemnity, with the perverse twist that the relator is not even accused of contributing to the defendant's fraud.  If such suits were allowed, they would punish innocent relators, would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud. The FCA contains provisions seeking to protect relators from retaliation, and it would run counter to this policy if the Court were to allow

retaliatory suits against truthful relators.   *Miller*, 505 F. Supp. 2d at 27-29.

In *United States ex rel. Grandeau v. Cancer Treatment Centers of America*, the court dismissed an FCA defendant's counterclaim for breach of a confidentiality agreement after concluding that the agreement could not "trump the FCA's strong policy of protecting whistle-blowers who report fraud against the government." 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004).

Just as public policy dictates that an employee confidentiality agreement may not be used to nullify the FCA vis-a-vis an employer, public policy considerations bar an employer from imposing on a former employee a promise to indemnify the employer for FCA damages paid by the employer to the Government.  If employers were permitted to impose such an indemnification yoke on employees, every employer could insulate itself from FCA qui tam lawsuits by any employees, thereby rendering the Act a nullity by financially penalizing any employees having the audacity to file a lawsuit as a qui tam whistleblower on behalf of the Government.

## VI.   COUNTERCLAIMS ASSERTING CONTRACTUAL REMEDIES ARE BARRED FROM QUI TAM CASES.

Yet another reason why the Counterclaim is a frivolous pleading is that the gravamen of such Counterclaim is that it seeks *contractual remedies* – specifically enforcement of a spurious contractual claim that Relator, by virtue of the medical liens indemnification clause in her Settlement Agreement in her state court case, she contractually agreed to indemnify ABC and Palyo for all FCA damages the U.S. and the State of California may recover from ABC and Palyo

## VII.   THE ABC/PALYO COUNTERCLAIM NEVER HAD ANY PROBABILITY OF PREVAILING ON THE MERITS.

The ABC/Palyo Counterclaim was always, and continutes to be, premised on two blatantly fallacious propositions:

(1) That Cullen is barred by principles of res judicata and collateral estoppel because she settled and released the FCA and CFCA claims on behalf of the U.S. and the State of California when she signed the Settlement Agreement in her individual employment law case; and

(2) That Cullen agreed to indemnify and hold harmless ABC and Palyo from any damages and attorney fees they may suffer in any *qui tam* claim on behalf of the United States and State of California.

In regard to the first proposition, a release of individual and personal claims, such as occurred in the Agreement settling *Cullen v. Association of Behavior Consultants*, Sonoma Superior Court Case No. SCV 256863, does not constitute a settlement and release of claims on behalf of the U.S. and the State of California, because only the government entities can settle and release claims under the False Claims Act.  See *United States ex rel Green v. Northrop Corp.*, 59 F.3d 953, 968 (9th Cir. 1995)  (A private agreement providing for release of a relator's claims is unenforceable since it would "impair a substantial public policy" in enforcing the FCA.)  Further, any alleged settlement and release on behalf of the government would require the consent of the Attorney General in order to be enforceable under 31 U.S.C. § 3730(b)(1). ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." See also *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 931 n.8 (10th Cir. 2005).

In regard to the second proposition, it is a far stretch for ABC, Palyo, and their counsel to suggest that such Agreement's promise to indemnify for subrogated medical liens by doctors, insurance carriers, and the like in regard to Cullen's personal injury amounted to a promise to indemnify ABC and Palyo for their fraud on federal and state taxpayers.  Such is all the moreso where the Agreement in question states on its face, in its Section 1.6 scope of application clause, that it does not apply to FCA claims on behalf of the United States and the State of California.

## VIII.   DEFENDANTS' COUNTERCLAIM WAS PRESENTED FOR THE IMPROPER PURPOSE OF RETALIATING AGAINST PROTECTED SPEECH.

The ABC/Palyo Counterclaim is presented for an improper purpose, to harass Relator Deborah Cullen and to cause unnecessary delay or needless increase in the cost of litigation, in violation the anti-retaliation protection afforded by the FCA (31 U.S.C. § 3730(h)), the anti-retaliation protection afforded by the CFCA (Cal. Gov. C. § 12653), and the protection afforded

by Fed. R. Civ. P. Rule 11 against frivolous pleadings having no basis in law and fact and
pleadings used for an improper purpose.

Relator Cullen's action in prosecuting this *qui tam* lawsuit is an act in furtherance of her
rights of petition or free speech.  *Rusheen v.* Cohen, 37 Cal.4th 1048, 1056 (2006).

A relator's pursuit of a *qui tam* action unquestionably is protected activity, as reflected by
the fact that both the FCA and the CFCA clearly enunciate a very strong public policy of
protecting FCA relators from retaliation.  See 31 U.S.C. §3730(h) and Cal. Gov. C. § 12653.


**X.    THE SUBJECT ABC/PALYO COUNTERCLAIM VIOLATED RULE 11
        BECAUSE ITS CLAIMS AND LEGAL CONTENTIONS ARE NOT
        WARRANTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT
        FOR THE EXTENSION, MODIFICATION, OR REVERSAL OF EXISTING LAW
        OR THE ESTABLISHMENT OF NEW LAW.**

In violation of Fed. R. Civ. P. Rule 11, the allegations and factual contentions of the
subject ABC/Palyo Counterclaim have no evidentiary support and are not likely to have
evidentiary support after a reasonable opportunity for further investigation or discovery.


**XI.   UNDER RULES OF CONTRACT INTERPRETATION, THE SETTLEMENT
        AGREEMENT'S SECTION 1.6 SCOPE OF APPLICATION CLAUSE MUST BE
        RECOGNIZED AS THE PARTIES' UNAMBIGUOUS EXPRESSION OF
        INTENT, AND ITS SECTION 4.3 INDEMNIFICATION CLAUSE MUST BE
        VIEWED IN CONTEXT AS PERTAINING TO ANY MEDICAL AND SUBROGA-
        TION LIENS ASSOCIATED WITH CULLEN'S ALLEGED PERSONAL INJURY.**

California courts hold that the primary objective in interpreting a contract is to ascertain
and carry out the intention of the parties. *City of Manhattan Beach,* 31 Cal.Rptr.2d 206, at 238
(1994) "The fundamental goal of contractual interpretation is to give effect to the mutual intention
of the parties . . . .   If contractual language is clear and explicit, it governs." (citations omitted).
*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  "A contract must be so

interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

Yet, ABC and Palyo boldly and recklessly refuse to recognize and address the parties' unambiguous expression of intent clearly set forth in Section 1.6 of the Settlement Agreement, that the Agreement "specifically applies to any individual and/or representative claims of *whistle-blower retaliation* . . ." and that it *"does not* extend to any claim or action by the United States or the State of California, or to any reward paid by the United States or the State of California, pursuant to the FCA (31 U.S.C. §§ 3729 et seq.), the CFCA (Cal. Gov. Code §§ 12650 et seq.), or any other federal or state statute or regulation whereby a government entity claims entitlement to recover funds and pays to anyone a reward for such recovery." (Italics supplied.) Given this explicit language of Section 1.6 of the Agreement, Rule 11 does not permit ABC and Palyo to turn around and contend the exact opposite – *i.e.*, that the Agreement *does* apply to FCA and CFCA claims of the United States and the State of California.

To the extent Defendants in their Counterclaim relied on Section 4.3 boilerplate medical liens indemnity language that courts, lawyers, and insurance adjusters routinely see in the release of every civil case that includes an allegation of personal injury, the following must be taken into account:

(1) Cullen's Verified Complaint in her individual employment law case against ABC alleged she suffered ". . . emotional and physical injuries and distress, anguish, embarrassment, humiliation, and mortification . . . ." (Verified Complaint, ¶¶ 18, 25, and 32, Sonoma Superior Court Case No. SCV-256863.)

(2) California courts repeatedly apply a *contextual analysis* in determining how to interpret contracts. *Pacific Gas & Electric v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, at 40-41 (1968); Cal. Civ. Code § 1645  A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates. Cal. Civ. Code § 1647.  Further, particular clauses of a contract are subordinate to its general intent.  Cal. Civ. Code § 1650.  Here, the general intent was settlement of Deborah Cullen's claims for lost earnings and personal injury as a result of workplace retaliation, with a standard medical liens

indemnification clause to cover the rare case where a medical provider or insurer asserts a lien for unpaid medical bills.  As part of the contextual analysis, the court must interpret Section 4.3 in light of Section 1.6 and all the other sections of the contract.  Cal. Civ. Code § 1641.

(3) The Section 4.3 medical liens indemnification clause of the Settlement Agreement settling Plaintiff's individual state court case must be given its *ordinary and generally accepted plain meaning and course of dealing in the legal profession and insurance industry*, in the context of defense counsel settling an individual's claim of alleged personal injury.  (*See* "Relator's Fed. Rule of Evid. 201 Request for Judicial Notice of the Customary Practice and Course of Dealing in Regard to Use of Indemnification Clauses in Written Agree-ments Settling Personal Injury Cases . . . .")  Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.  Cal. Civ. Code § 1645.

(4) Relator asks the Court to take judicial notice of the fact that in the legal profession and in the insurance industry, in cases in which a claimant has alleged personal injury, it is a common and customary practice and course of dealing to routinely insert, in a written settlement agreement and release, an indemnification clause to protect the party paying the settlement from medical lien claims for services and/or products by doctors, clinics, laboratories, hospitals and other medical providers who availed their services or products to the claimant, and from subrogation lien claims by medical benefits insurers, both private and government-funded, who paid for such services and/or products on claimant's behalf.  *See* "Relator's Fed. Rule of Evid. 201 Request for Judicial Notice of the Customary Practice and Course of Dealing in Regard to Use of Indemnification Clauses in Written Agreements Settling Personal Injury Cases . . . ."

(5) The Section 4.3 boilerplate medical liens indemnification clause, having been drafted by counsel for ABC and its officers (Bartley Decl., ¶ 5), must be construed most strictly against ABC and Palyo.  "In case of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

(6) In cases involving contract interpretation, courts are vested with the task of achieving

a reasonable result consistent with the intention of the parties. Cal. Civ. Code § 1643.

(7) The Section 4.3 boilerplate medical liens indemnification clause *on its face* limits its application only to "incidents set forth in the allegations of the complaint."  The allegations by Cullen in her Verified Complaint in her individual state court action *absolutely did not* include a federal False Claims Act qui tam cause of action on behalf of the United States or a California False Claims Act cause of action on behalf of the State of California.

## XII. THE COURT MAY EXERCISE IT INHERENT AUTHORITY TO ORDER THAT ABC AND PALYO, RATHER THAN RELATOR DEBORAH CULLEN, BEAR THE ENORMOUS ATTORNEY FEES THAT WERE INCURRED BY RELATOR IN DEFENDING AGAINST THE SUBJECT FRIVOLOUS AND RETALIATORY COUNTERCLAIM.

On top of authority to award attorney fees pursuant to the California Anti-SLAPP Statute and FRCP Rule 11, the Court may exercise its inherent authority to order that ABC and Palyo - rather than Deborah Cullen - bear the costs of defense against the subject Counterclaim.  Federal courts have inherent power to assess attorney fees against a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 US 240, 258-259.

## CONCLUSION

The scope of application clause in the subject September 2016 Settlement Agreement is its Section. 1.6.  Such Section 1.6 unambiguously and explicitly declares that such Agreement applies to Cullen's personal and individual whistleblower retaliation claims under the FCA and CFCA, but *not* to claims of the Government under the FCA and CFCA.

Further, the Settlement Agreement's Section 4.3 medical liens indemnification clause, when viewed – as it must, by law, be viewed – in the context of settlement of Cullen's claim of *personal injury* (emotional distress) alleged in her state court employment law case, is by no stretch of the imagination a promise by Cullen to indemnify Defendants for the over $1.5 million

(before imposition of treble damages and statutory per-incident penalties) she in this qui tam action alleges Defendants stole from the taxpayers through billing fraud.

It is incongruous that Section 1.6 would expressly reserve Cullen's right to recover her statutory relator's share (31 U.S.C. § 3730(d) and Cal. Gov. C. § 12652(g)) against any govern-ment recovery under the FCA and CFCA if she had agreed to indemnify this outlaw organization for over $1.5 million in billing fraud.

Additionally, it is incongruous that Section 1.6 would expressly except from its application FCA and CFCA claims of the United States and the State of California if such claims had been settled by Cullen in her state court employment law case.

As to Defendants' Counterclaim, there is no genuine dispute as to any material fact, and Relator Cullen is entitled to judgment as a matter of law:  **a dismissal with prejudice**.

Further, Defendants' Counterclaim is brazenly, recklessly, and shamefully frivolous..

For all the foregoing reasons, the ABC/Palyo Countercliam should be dismissed, but only with the appropriate and just consequences:  Relator Deborah Cullen's Rule 56 motion for summary judgment as to Defendants' Counterclaim was meritorious and should be re-visited and granted.  Further, pursuant to the Court's inherent power, pursuant to Fed. R. Civ. P. Rule 11(c), and pursuant to Cal. Code Civ. P. § 425.16(c)(1) (the California Anti-SLAPP statute), the Court may and should award to Relator her costs and her reasonable attorney fees, affording to the parties a briefing schedule for presenting such itemized attorney fees, complying with due process for setting attorney fees awards.

Dated:  December 6, 2019                    Respectfully submitted,

                                          BARTLEY LAW OFFICES
                                          ATTORNEYS FOR RELATOR
                                          DEBORAH CULLEN

                                          */s/Daniel R. Bartley*
           By:     _____
                                            Daniel Robert Bartley, Esq.

**PROOF OF SERVICE**

I declare I am employed in the County of Santa Clara, State of California, by Bartley Law Offices, 1999 South Bascom Avenue, Suite 700, Campbell, CA 95008-2205. I certify that I am over the age of 18.

I hereby certify that on today's date, I electronically filed the foregoing **"RELATOR'S POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION FOR ATTORNEY FEES INCIDENT TO DISMISSAL OF THE FRIVOLOUS AND RETALIATORY COUNTERCLAIM OF DEFENDANTS AND CROSS-PLAINTIFFS ASSOCIATION OF BEHAVIOR CONSULTANTS AND WILLIAM J. PALYO"** with the Clerk of the United States District Court for the Northern District of California by using the District Court's CM/ECF system. I certify that all the counsel listed below are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| | |
|---|---|
| Michael L. Levangie, Esq., and<br>Bryan L. Malone, Esq.<br>Levangie Law Group<br>2021 N Street<br>Sacramento, CA 95811<br>Tel 916-448-4849<br>Fax 916-443-4855<br>Bryan.Malone@LLG-Law.com<br>Michael.Levangie@LLG-Law.com | Michelle Lo, AUSA<br>450 Golden Gate Avenue<br>Box 36055<br>San Francisco, California 94102 Telephone:<br>(415) 436-7180<br>Facsimile: (415) 436-6748<br>Email: Michelle.Lo@usdoj.gov |

Jennifer S. Gregory, Deputy Attorney General
Office of the Attorney General of Califomia
2329 Gateway Oakds Drive, Suite 200
Sacramento, CA 95833
Tel 916-621-1823   Cell 310-801-4891
Fax 916-274-2929
Jennifer.Gregory@doj.ca.gov

I declare under penalty of perjury, under the laws of the United States and the State of Califomia, that the foregoing is true and correct and that this declaration was executed on this 6th day of December, 2019, in the City of Fairfield, Solano County, California.

*/s/Daniel R. Bartley*

_____
Daniel R. Bartley